IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VARFLAY KANNEH | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-4621 |
| | : | |
| JOHN RIFE, in his official capacity as | : | |
| ICE Field Office Director, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                 **July 31, 2026**

Petitioner Varflay Kanneh brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his detention by the U.S. Department of Homeland Security (DHS) after U.S. Immigration and Customs Enforcement (ICE) revoked his Order of Supervision and detained him at a scheduled check-in. He contends ICE failed to comply with the mandatory procedures governing revocation of supervision and re-detention. The record supports Kanneh's contention. Because ICE deprived Kanneh of liberty without the process its own regulation requires, the Court will grant the petition and order his release under the conditions of his prior Order of Supervision.

**BACKGROUND**

Kanneh is a 47-year-old native and citizen of Liberia. Pet. ¶ 16, Dkt. No. 1. He entered the United States as a refugee on October 19, 2000. *Id.*; Gov't Ex. A 2, Dkt. No. 6-1. In January 2013, an immigration judge ordered him removed to Liberia, and Kanneh waived appeal. Gov't Resp. 3, Dkt. No. 6; Gov't Ex. B, Dkt. No. 6-2. But DHS did not remove him. Instead, on September 27, 2013, DHS released him under an Order of Supervision (OSUP) while it sought travel documents. Gov't Ex. A 3.

Kanneh remained under supervision for nearly thirteen years. Pet. ¶¶ 19, 22. He alleges, and the Government does not dispute, that he attended his required check-ins and complied with the OSUP. *Id.* During that period, he married a United States citizen, maintained employment, and paid court-ordered restitution for a previous conviction. *Id.* ¶¶ 17–19. His wife's Form I-130 petition, an initial petition filed with the U.S. Citizenship and Immigration Services (USCIS) to establish a legal family relationship, was approved in December 2019. Gov't Ex. A 3. Kanneh and his wife have a four-year-old United States citizen son who has severe, nonverbal autism and requires full-time care. Pet. ¶ 21.  Kanneh's wife also helps care for her mother, who lives with the family and has significant medical needs. Pet'r's Reply 4–5, Dkt. No. 7.

On June 30, 2026, Kanneh appeared at ICE's Philadelphia field office for a scheduled check-in. Pet. ¶ 1. ICE took him into custody at 8:59 a.m. Gov't Ex. A 1. The agency then prepared a Notice of Revocation of Release. Gov't Ex. C, Dkt. No. 6-3. The Notice states ICE revoked the OSUP under 8 C.F.R. § 241.13(i) because circumstances had changed and there was a significant likelihood Kanneh could be removed in the reasonably foreseeable future. *Id.* at 1. But the box stating ICE had obtained a travel document and scheduled removal was left unchecked. *Id.* The Notice instead states only that ICE was "seeking a travel document" for removal to Liberia. *Id.* at 2.

The Notice also contains a section titled "Notice of Informal Interview." *Id.* The line for the interview date is blank. *Id.* Deputy Field Office Director Elizabeth Cox digitally signed the Notice at 1:30:39 p.m., more than four hours after ICE took Kanneh into custody. *Id.* An officer served it to Kanneh at 2:30 p.m. *Id.* Thus, ICE held Kanneh for more than five hours before serving the written reasons for revocation.

ICE also completed an OSUP Revocation Worksheet. Gov't Ex. E, Dkt. No. 6-5. Under the section asking for events supporting a significant likelihood of removal in the reasonably foreseeable future, the worksheet lists one fact: "Various Liberian identity documents, to include the subject's birth certificate are in the A-File." *Id.* at 1. The worksheet identifies no removal date, no travel document, and no confirmation that Liberia had agreed to accept Kanneh. It also states there were no childcare or "healthcare issues," despite the family circumstances documented in Kanneh's petition and reply. *Id.* at 2.

On July 2, 2026, Kanneh filed this habeas petition. The Government filed its response on July 10, 2026. It argued removal had become foreseeable because ICE had generally removed other Liberian nationals, possessed Kanneh's identity documents, and believed the expiration of Deferred Enforced Departure for some Liberian nationals was relevant. Gov't Resp. 3–4. As to the required informal interview, the Government stated the interview was "scheduled for today, July 10, 2026," and that it intended later to submit an ICE form corroborating the interview. *Id.* at 8–9, n.3. As of the date of this opinion, the Government has not filed an interview form or other evidence confirming an interview occurred.

Kanneh filed a reply on July 14, 2026. He argues ICE never identified an actual changed circumstance specific to him, never obtained a travel document, and did not follow the notice and interview requirements. Pet'r's Reply 2–9. He seeks immediate release. *Id.* at 11.

**JURISDICTION**

Federal district courts have habeas jurisdiction over § 2241 petitions that raise constitutional challenges to detention. *Demore v. Kim*, 538 U.S. 510, 522–23 (2003); *see also INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served

as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

The Government argues 8 U.S.C. § 1252(g) strips this Court of jurisdiction. It does not. Section 1252(g) states, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders against any alien under this chapter." The Third Circuit has cautioned this bar "does not sweep broadly" and "reaches only these three specific actions, not everything that arises out of them." *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion)); *see also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). Kanneh's narrower claim challenges the legal basis for his present custody. And as the Government acknowledges, the Court may review whether ICE followed its own revocation procedures. *See* Gov't Resp. 5–7. Because Kanneh contends ICE deprived him of liberty without complying with mandatory procedures that govern re-detention, § 1252(g) does not bar his claims.

**DISCUSSION**

Section 1231 governs detention after entry of a final removal order. During the statutory ninety-day removal period, detention is mandatory. 8 U.S.C. § 1231(a)(1)–(2). If removal does not occur during that period, the Government may continue detention in circumstances described by § 1231(a)(6) or release the person under supervision. *Id.* § 1231(a)(3), (6).

The regulations permit ICE to revoke supervised release when "changed circumstances" support a determination that "there is a significant likelihood that the alien may be removed in the

4

reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). In making that determination, ICE must consider the facts of the individual case, including the person's "efforts to comply with the order of removal," the history of removals to the destination country, ICE's efforts to remove that person, "the foreseeable results of those efforts, and the views of the Department of State." *Id.* § 241.13(f). Revocation of an OSUP triggers mandatory process. Section 241.13(i)(3) provides:

> Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

*Id.* § 241.13(i)(3). The regulation therefore mandates an opportunity to contest ICE's factual basis for returning the person to custody.

When an agency promulgates binding regulations that condition when and how it may act, it must follow those rules. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–67 (1954); *Leslie v. Att'y Gen.*, 611 F.3d 171, 175 (3d Cir. 2010) ("[R]ules promulgated by a federal agency that regulate the rights and interests of others are controlling upon the agency."). This principle applies with particular force "[w]here the rights of individuals are affected." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). And it applies even when the ultimate decision involves discretion. *See Service v. Dulles*, 354 U.S. 363, 382–87 (1957). An action taken in disregard of mandatory regulations is unlawful. *Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959) (finding the government's action to be illegal where its procedure "fell substantially short of the requirements of the applicable departmental regulations"). Recent decisions in this District and across the country have applied that principle to OSUP revocations and held that ICE must provide the notice and informal

5

interview required by its regulations. *See, e.g.*, *Martinez v. Jamison*, No. 26-718, 2026 WL 700335, at *8 (E.D. Pa. Mar. 12, 2026); *Dudamel v. Jamison*, No. 26-361, 2026 WL 498612, at *7–8 (E.D. Pa. Feb. 23, 2026); *Garrison G. v. Bondi*, 825 F. Supp. 3d 853, 856–57 (D. Minn. 2026); *Mejia v. U.S. Immigr. & Customs Enf't & Removal Operations*, 828 F. Supp. 3d 273, 278–83 (D.N.H. 2026).

The record demonstrates ICE did not comply with § 241.13(i)(3). When ICE served the revocation notice on June 30th, the line identifying the interview date was blank. Gov't Ex. C 2. Ten days later, the Government did not say an interview had occurred. Instead, it said the interview was "scheduled for today" and promised to submit a form later. Gov't Resp. 8–9, n.3. The Government has supplied no such form or any other evidence. A promise of future process does not establish compliance with a regulation requiring an interview "promptly after" return to custody. 8 C.F.R. § 241.13(i)(3). The interview must occur soon enough to give the person a meaningful opportunity to contest the asserted basis for revocation before the initial re-detention turns into continued confinement. *See Funes v. Francis*, 810 F. Supp. 3d 472, 496–501 (S.D.N.Y. 2025). On this record, Kanneh remained detained for ten days before the Government even represented that an interview had been scheduled. The Government offers no explanation for that delay.

Even assuming ICE interviewed Kanneh on July 10th, the delay was not "prompt" under the circumstances. ICE arrested him at a scheduled compliance check-in after almost thirteen years of supervision. It had advance notice he would appear and had prepared a revocation worksheet and notice. Nothing in the record explains why ICE could not conduct the short informal interview when it took him into custody or shortly thereafter. And because the Government has not produced

the promised form, the Court cannot determine whether any July 10th interview allowed Kanneh to present evidence and respond to ICE's reasons for revocation.

That procedural defect was consequential. The regulation expressly allowed Kanneh to present evidence that removal was not significantly likely in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(3). He could have pointed out that ICE had no travel document, had not scheduled removal, and identified only documents already in its file. He also could have explained that the expiration of Deferred Enforced Departure did not concern him if, as he asserts, he was not in that status. *See* Pet'r's Reply 5. He could have addressed his compliance with supervision and the absence of any alleged OSUP violation. The interview also would have permitted him to correct the worksheet's statements that there were no childcare or healthcare issues. The record shows a substantial risk that ICE made and maintained its detention decision without considering facts the regulation required it to hear.

ICE's procedural failure violated Kanneh's right to due process. The Due Process Clause "applies to all 'persons' within the United States, including [noncitizens]" subject to removal orders. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Freedom from physical confinement "lies at the heart of the liberty protected by the Due Process Clause." *Id.* at 690. In the civil immigration detention context, due process requires procedures reasonably calculated to avoid erroneous deprivation of liberty. *See Mathews v. Eldridge*, 424 U.S. 319, 333–35 (1976); *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331–32 (3d Cir. 2021) (applying *Mathews* to civil immigration detention context). Under *Mathews*, the Court balances: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and

administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

The *Mathews* factors favor Kanneh. First, his liberty interest is substantial. The Third Circuit "has previously recognized the critical liberty interest implicated by immigration detention." *Patel v. Zemski*, 275 F.3d 299, 309 (3d Cir. 2001), *abrogated on other grounds by Demore*, 538 U.S. 510. Further, ICE removed him from his family and community after nearly thirteen years on supervision. Second, the risk of error was high. The revocation worksheet offered only a conclusory reference to identity documents, while the Notice confirmed ICE was still seeking a travel document. The worksheet also omitted or misstated significant family circumstances. A prompt interview would have required ICE to hear Kanneh's response and create a record showing whether it considered the individualized facts relevant to foreseeable removal. Third, the Government has no substantial burden because its own regulation already requires the interview. Conducting and documenting that interview promptly imposes only the process ICE itself determined was necessary. ICE's failure to follow § 241.13(i)(3) therefore violated Kanneh's procedural due process rights.[1]

Having determined that Kanneh's detention violates his due process rights, the proper remedy here is release. Section 2243 authorizes the Court to dispose of a habeas matter "as law and justice require." 28 U.S.C. § 2243. And the "typical remedy" for "unlawful executive detention" is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). The Court will therefore order Kanneh's immediate release subject to the conditions of his preexisting OSUP.

---

[1]    Because this defect independently requires relief, the Court need not decide whether the five-hour delay in serving the revocation notice also violated the requirement that notice be given "upon revocation." Nor does the Court decide Kanneh's alternative claims under the Administrative Procedure Act and substantive due process.

8

**CONCLUSION**

Because ICE did not provide the prompt informal interview required by 8 C.F.R. § 241.13(i)(3), Kanneh's continued detention violates the Due Process Clause. Accordingly, the Court will grant the petition and order his immediate release under the conditions of his prior Order of Supervision. An appropriate Order follows.

BY THE COURT:
/s/ Juan R. Sánchez
Juan R. Sánchez, J.